IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


SONIA INGERMANSON,

                                 Civ. No. 05-6246-AA

               Plaintiff,             OPINION AND ORDER

          vs.

JOANNE B. BARNHART,
Commissioner of Social Security,

              Defendant.


AIKEN, Judge:

## **INTRODUCTION**

Plaintiff, Sonia Ingermanson ("Ingermanson"), brings this action pursuant to the Social Security Act, 42 USC § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Disability Insurance and Supplemental Security Income ("SSI") benefits. For the reasons set forth below, the decision of the Commissioner is reversed and this matter is remanded for the calculation of benefits.

///

1 - OPINION AND ORDER

## PROCEDURAL BACKGROUND

Ingermanson filed applications for DIB in 1995 and 1996. These claims were denied and there was no appeal.  Ingermanson filed this application for benefits on July 2, 1997, alleging disability since November 28, 1994.  Her application was denied initially and upon reconsideration.  On March 4, 1999, a hearing was held before Administrative Law Judge ("ALJ") John J. Madden, Jr.  In a decision dated October 21, 1999, the ALJ found Ingermanson was not entitled to benefits.  The Appeals Council denied Ingermanson's request for review, making the ALJ's decision the final decision of the Commissioner.

Ingermanson sought judicial review of the Commissioner's decision.  On August 27, 2002, United States Magistrate Judge John Jelderks issued Findings and Recommendations in which he found that the ALJ erred in rejecting the opinions of Drs. Fredrickson and Vindiver, Ingermanson's treating psychiatrists. Tr. 765-86.[1]  Judge Jelderks recommended that their opinions be credited "as a matter of law."  Tr. 782.  He found that the ALJ's analysis as to whether Ingermanson met the criteria of a listed impairment, residual functional capacity, and drug and alcohol analysis were all flawed because the ALJ had improperly rejected the treating psychiatrists' opinions.  Tr. 784-85.  Judge

---

[1]Citations are to the page(s) indicated in the official transcript of the record filed with the Commissioner's Answer.

Jelderks recommended that the case be remanded for the ALJ to re-evaluate steps two through five of the sequential analysis. The Findings and Recommendation was adopted by United States District Judge Garr M. King on September 24, 2002. Tr. 787-88. Judgment was entered remanding the case for further proceedings. Tr. 789.

On November 14, 2003, ALJ Madden held a second hearing. Tr. 1330-1407. In a decision dated May 24, 2005, the ALJ again found Ingermanson was not entitled to benefits. Tr. 697-715. The Appeals Council denied Ingermanson's request for review, making the ALJ's decision the final decision of the Commissioner. Ingermanson now seeks judicial review of the Commissioner's decision.

STANDARDS

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995), *cert. denied*, 517 US 1122 (1996). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F2d 841, 849 (9th Cir 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 USC § 405(g); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir 1986). The Commissioner's decision must be upheld, however, if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 CFR §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir 1999):

Step One. The Commissioner determines whether claimant is engaged in substantial gainful activity. If so, claimant is not disabled. If claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate claimant's case under step two. 20 CFR §§ 404.1520(b), 416.920(b).

Step Two.  The Commissioner determines whether claimant has one or more severe impairment.  If not, claimant is not disabled. If claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under step three.  20 CFR §§ 404.1520(c), 416.920(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether claimant's impairment "meets or equals" one of the impairments listed in the Social Security Administration (SSA) regulations, 20 CFR Part 404, Subpart P, Appendix 1.  If so, claimant is disabled.  If claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of claimant's case proceeds under step four.  20 CFR §§ 404.1520(d), 416.920(d).

Step Four.  The Commissioner determines whether claimant is able to perform work he or she has done in the past.  If so, claimant is not disabled.  If claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of claimant's case proceeds under step five.  20 CFR §§ 404.1520(e), 416.920(e).

Step Five.  The Commissioner determines whether claimant is able to do any other work.  If not, claimant is disabled.  If the Commissioner finds claimant is able to do other work, the Commissioner must show a significant number of jobs exist in the

5  - OPINION AND ORDER

national economy that claimant can do.  The Commissioner may
satisfy this burden through the testimony of a vocational expert
("VE") or by reference to the Medical-Vocational Guidelines, 20
CFR Part 404, Subpart P, Appendix 2.  If the Commissioner
demonstrates a significant number of jobs exist in the national
economy that claimant can do, claimant is not disabled.  If the
Commissioner does not meet this burden, claimant is disabled.  20
CFR §§ 404.1520(f)(1), 416.920(f)(1).

    At steps one through four, the burden of proof is on the
claimant.  *Tackett*, 180 F.3d at 1098.  At step five, the burden
shifts to the Commissioner to show that the claimant can perform
jobs that exist in significant numbers in the national economy.
Id.

## ALJ's DECISION

    At step one, the ALJ found Ingermanson had not engaged in
substantial gainful activity since the alleged onset of her
disability.

    At step two, the ALJ found Ingermanson had the medically
determinable severe impairments of a history of drug abuse, an
affective disorder, bipolar disorder, personality disorder with
borderline features, possible post traumatic stress disorder,
asthma and hepatitis C.  This finding is in dispute.

    At step three, the ALJ found that Ingermanson's impairments,
including drug and alcohol abuse, met the requirements of

Listings 12.04, 12.08, and 12.09.  However the ALJ found
Ingermanson's impairments without drug and alcohol abuse did not
meet or medically equal the criteria of any listed impairments.
This finding is in dispute.

The ALJ found that Ingermanson was not fully credible and
retained the residual functional capacity to perform medium work,
limited to simple, repetitive tasks without high production
demands, and was unable to work in the presence of  environmental
irritants.  This finding is in dispute.

At step four, the ALJ found that Ingermanson can not
perform her past relevant work.  This finding is not in dispute.

At step five, the ALJ found that Ingermanson can work at
such jobs as bench assembler, marker II and laundry worker II,
and therefore is not disabled.

<u>**DISCUSSION**</u>

Ingermanson contends that the ALJ erred by:  (1) failing to
comply with this court's order to credit the opinions of  Drs.
Fredrickson and Vandiver; (2) rejecting the opinion of the
examining psychologist; and (3) finding her capable of sustaining
work.  Because the first assertion is dispositive, the court need
not address the latter two.

I.  <u>Medical Evidence</u>

Born in 1962, Ingermanson was 36 years old at the time of
the first hearing.  She has a GED and training as a certified

7 - OPINION AND ORDER

nursing assistant.  Tr. 57-58.  She has worked as an odd job

worker, a home care provider, and a housekeeper.  Tr. 106.

The medical records submitted in this case accurately set

out Ingermanson's medical history as it relates to her claim for

benefits.  The court has carefully reviewed the records, and the

parties are familiar with them.  Accordingly, the details of

those medical records will not be recounted here.

II.  The ALJ Erred By Failing to Credit the Treating
Psychiatrists

A.  Dr. Fredrickson's Opinion

Ingermanson began treatment at Marion County Mental Health

("MCMH") on June 19, 1997.  Tr. 515-61.  Richard Fredrickson,

M.D., a MCMH psychiatrist, wrote on August 12, 1997:

> Sonia is in the high-risk (Level III-Complex) program
> of the Case Coordination Team for medication management
> of the Long Term Behavior Health Services of Marion
> County.  She has just recently been in psychiatric
> respite care for five days at our Greenway House
> facility on the Oregon State Hospital grounds.  It is
> only in the last three months that Sonia has been
> mentally recovering from ten years on "the streets" as
> a homeless person.  During that time she received
> both psychological and physical abuse.  She is living
> with her family now....
>
> Sonia's mental health counselor states that Sonia has
> the social age of a teenager.  This does present a bar
> to employment for a thirty-four year old.  We do not
> believe that she is able to engage in substantial,
> gainful activity.  Objectively, her stream of thought
> content is upset by her command hallucinations and her
> constantly hearing voices.  The voices talk to her and
> interrupt her concentration and pace.  This also makes
> it hard for her to actively participate in group

activities.  There are effects on social contacts and
the ability to communicate with others.  The client
reports racing thoughts and pressured speech.

Sonia is a spend thrift and is not capable of managing
her own funds.  We have found no residual functional
capacity and we state thashe is unable
to engage in sedentary work as defined by the _
Dictionary of Occupational Titles Rev.4th Ed.

As we talked about on the phone, we cannot help you
with the period 1991 to 1996.  We enclose the
Comprehensive Assessment of 6/24/97
when she was first seen and the progress note of
7/29/97 when she was last seen.

Sonia's disability will last longer than twelve months.
She is currently experiencing voices, depression,
suicidal ideation and anxiety.

Tr. 515-16.

   Dr. Fredrickson stated that his diagnosis was Bipolar I
Disorder, Most Recent Episode Mixed, Severe with Psychotic
Features; Polysubstance Dependence;  Antisocial Personality
Traits; and Borderline Personality Traits.  He assessed a  Global
Assessment of Functioning ("GAF") score of 45-50[2].  *Id*

B.  Dr. Vandiver's Opinion

---

   [2] The GAF scale is a tool for "reporting the clinician's judgment of the individual's
overall level of functioning."  American Psychiatric Ass'n., Diagnostic and Statistical Manual of
Mental Disorders 32 (4th ed. 2000)).  It is essentially a scale of zero to 100 in which the clinician
considers "psychological, social, and occupational functioning on a hypothetical continuum of
mental health-illness," not including impairments in functioning due to physical or environmental
limitations.  *Id* at 34.  A Global Assessment of Functioning ("GAF") score between 41 and 50
indicates "Serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent
shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no
friends, unable to keep a job)."  *Id* at 32.

Robert Vandiver, M.D., a psychiatrist with Linn County Mental Health examined Ingermanson on August 26, 1998. Dr. Vandiver found that Ingermanson suffered from a schizo-affective disorder, a combination of affective symptoms and psychotic symptoms. Tr. 574. Dr. Vandiver noted that "the drug abuse that she has been involved in has probably played a role in exaggerating the severity of her symptoms, but she is clean and sober now and certainly a good candidate for remaining on medicine, in fact, I suspect her Risperdal dosage is inadequate." *Id* He assigned a GAF of 24 because she was receiving command hallucinations and responding to some of them.

C. The ALJ's 1999 Decision

In his first decision in this matter the ALJ noted Dr. Fredrickson's opinion and rejected it because (1) Fredrickson had stated that Ingermanson had been living "on the streets" when in fact she had been living with a series of male friends; (2) that Ingermanson had been in respite care signified a possible drug and alcohol relapse; (3) Fredrickson failed to mention drug and alcohol abuse; (4) Fredrickson hadn't seen Ingermanson for two weeks; and (5) Fredrickson's opinion conflicted with the same day note written by another staff person stating that Ingermanson was clean, her medications were working, and she was going on a road trip with a friend. Tr. 25-26.

The ALJ implicitly rejected Dr. Vandiver's opinion by failing to address it in his decision.

D.  This Court's August 2002 Opinion

This court found that because Dr. Fredrickson's opinion was controverted by other medical evidence, the ALJ had to articulate specific, legitimate reasons to reject it, citing *Magallanes v. Bowen,* 881 F2d 747,751 (9th Cir 1989).  This court specifically found that each of the ALJ's reasons outlined above was not legitimate.  This court found that the ALJ erred in rejecting the opinions of Drs. Fredrickson and Vandiver, and ordered them "credited as a matter of law."  Tr. 782.  These Findings and Recommendation were adopted by Judge King on September 24, 2002, and Judgment was entered remanding this case for further proceedings.  Tr. 788-89.

E.  Dr. Vandiver's September 2003 Letter

In response to a request from counsel, Dr. Vandiver wrote:

> You asked whether I concur with the opinions expressed by Dr. David Sweet's evaluation of August 28 of 2001[3].

---

[3] David N. Sweet, Ph.D., conducted a Comprehensive Psychological Evaluation of Ms. Ingermanson on  August 23, 2001. Tr. 1071-77. Dr. Sweet conducted a clinical interview and administered the Wechsler Adult Intelligence Scale - Third Edition ("WAIS-III").  He attempted to administer the Minnesota Multiphasic Personality Inventory - 2, but "[t]his woman has low cognitive abilities and poor comprehension and was not able to complete that test...[t]he test is not normed for people who function in the Mild range of Mental Retardation, as does Ms. Ingermanson." Tr.  1071.  The WAIS-III score full scale IQ of 59 is the mild range of mental retardation.  Dr. Sweek diagnosed Post-Traumatic Stress Disorder, Chronic; Bipolar Disorder, most recent episode depressed, moderate; Polysubstance Dependence, in early remission, by her report; Mild Mental Retardation; Personality Disorder, NOS, with Characteristics of Bipolar and Dependent Personality Disorders, and assessed a GAF of 50.  Dr. Sweek stated  that "this is a

11  - OPINION AND ORDER

I certainly do. I also agree that the findings would
not be any different, irrespective
of drug or alcohol abuse. Dr. Sweet has fairly
perfectly described Sonia. In my more recent work with
her I do not believe she has been involved in any
substance abuse and she has not changed in presentation
in any way whatsoever.

Tr. 1249.

F.  The ALJ's March 2005 Decision

   After remand for further proceedings and a second hearing,

the ALJ stated:

Regardless of the District Court's directive, the
Administrative Law Judge does not find either of these
opinions to be entitled to controlling or great weight
in the context of the full record, including the expert
opinions of the two impartial medical experts in this
case. Dr. Fredrickson did not even consider the role
of substance abuse in rendering his opinion, a factor
which is pivotal in this case, and should have been
considered in that the claimant was a "dual diagnosis"
patient (drugs in combination with other mental
impairments) of Dr. Fredrickson. Notably, the
Administrative Law Judge concurs with a finding of
disability when substance abuse is present as a
material contributing factor. Relative to Dr.
Fredrickson's assessment of "no residual functional
capacity," she would need to be institutionalized, but
Dr. Fredrickson did not even suggest this. His
statement that "she is unable to engage in sedentary"
residual functional capacity, although in this
particular case, exertional limitations do not
exist, and a "sedentary" residual functional capacity

---

woman with multiple, chronic problems that are unlikely to be resolved in the near future. She
experiences depression, anger, anxiety and frustration. Her problem-solving ability is limited
and her judgment has been poor. These problems have bee compounded by alcohol and drug use
over the years. She claims to be clean and sober now, abut only sought treatment because she
was afraid she would lose disability funds. Ms. Ingermanson demonstrates problems with
attention, concentration and memory. It will be difficult for her [to] follow through on tasks and
she tends to withdraw from people and has difficulty forming appropriate relationships." Tr.
1076.

does not arise from a mental condition, such that Dr.
Fredrickson's statement is in effect is
[sic] nonsensical and not probative, though obviously
intended to advocate for disability, as vs.
presentation of objective medical opinion.

Tr. 710.

As to Dr. Vandiver's opinion, the ALJ stated:

...it appears that the opinion...was issued
at the time of his first personal
contact with the claimant, such that there was indeed
no longitudinal or continuing patient-doctor
relationship which is the primary basis for
giving greater and controlling weight....Notably, in
the August 26, 1998 chart note, Dr. Vandiver
essentially recited the claimant's subjective
complaints, which while if may be factually probative,
does not constitute an "opinion" as that term is
generally defined.  Regardless, the [ALJ]
accepts the statement of Ms. Ingermanson's subjective
complaints to Dr. Vandiver as a matter of law.
However, credibility is another issue; those
subjective complaints during the 30 minute visit which
he accepted at face value, the [ALJ] does not.
Interestingly, even Dr. Vandiver commented in his own
chart notes that "certainly the drug abuse that she has
been involved in has probably played a role in
exaggerating the severity of her symptoms" [citation
omitted], yet he failed to address any residual
effects of recent drug use.  It is additionally noted
that shortly thereafter, the claimant's primary care
physician Dr. Gallup noted that the claimant
told him that she could not work due to bipolar
disorder, but that "I have never seen her acutely
depressed or being manic" even though "she stated
she was too scared to work because she would walk off
the job, does not want to be stressed by working"
[citation omitted].

In a later letter solicited from Dr. Vandiver in
September 2003, the claimant's representative sought
to "piggyback" Dr. Vandiver's endorsement of
disability onto other medical opinions of record; Dr.
Vandiver was asked to and proceeded to critique the
various medical opinions.  In sum, Dr. Vandiver agreed
with Dr. Sweet's evaluation and endorsement of

disability, while he disagreed with the reports of both
Dr. Anderson and Dr. Higgins-Lee to the extent that
they were adverse to the claimant.  He also purported
to dispose of the DAA materiality issue by summarily
stating that "I also agree that the findings would not
be any different irrespective of any alcohol or drug
abuse" [citation omitted].  Although the [ALJ] has con-
sidered this opinion, it is clearly a form of patient
advocacy from a physician with a patient-doctor
relationship who has written a letter essentially
repairing the failings of his prior opinion; the letter
begins "I hope you are successful in establishing
benefits for Sonia."  This bias is also reflected in
his endorsement of Dr. Sweet's finding of mental
retardation, which is contradictory to his own prior
chart note that states "I would assess her intelligence
as being at least average" [citation omitted], an
observation which is consistent with Ms. Ingermanson's
GED education and vocational accomplishment of becoming
a certified nurse's aide.  Again, both Dr.
Fredrickson's and Dr. Vandiver's opinions are
contradicted by the more objective and impartial
opinion of Dr. Dragovich, who unlike these two
physicians, was privy to the entire documentary medical
evidence, enabling her to form a more complete
and objective depiction of the record as is required of
an impartial medical expert, as addressed below.

Tr. 710-11.

First, the ALJ rejects Dr. Fredrickson's opinion for failure

to address substance abuse in his opinion.  However, Dr.

Fredrickson was clearly aware of Ingermanson's substance abuse as

he specifically diagnosed polysubstance abuse.  Moreover, this

court specifically rejected this argument four years ago:

The ALJ next states that though "Dr. Fredrickson makes
a case for the claimant by failing to mention her drugs
and alcohol usage, the file is replete with evidence
that her psychological problems stem from her substance
abuse."  Tr. 25.  The ALJ misses the point.  It does
not matter where plaintiff's psychological
problems stem from, but rather whether they still exist
*in the absence of drug and alcohol abuse.*  *See Sousa v.*

> *Callahan,* 143 F.3d 1240, 1245 (9th Cir 1998).  Since
> the record shows plaintiff's
> symptoms exist in the absence of DAA, this is not a
> legitimate reason for rejecting Dr. Fredrickson's
> opinion.

Tr. 780(Emphasis in original).

Second, the ALJ rejects Dr. Fredrickson's opinion that Ingermanson has "no functional residual capacity" because, according to the ALJ, that means she would need to be institutionalized.  The ALJ rejected Dr. Fredrickson's finding that Ingermanson could not perform a sedentary job, noting that Ingermanson's limitations are non-exertional.  The ALJ concluded that Dr. Fredrickson's opinion was "nonsensical and not probative" and simply advocacy.  Tr. 710.  A fair reading of Dr. Fredrickson's opinion is that he believed Ingermanson was unable to work at any job, even a sedentary job, because of her mental condition, including the distraction of her command hallucinations.  Tr. 515.

The Commissioner argues that the ALJ correctly rejected Dr. Fredrickson's opinion as advocacy, citing *Matney v. Sullivan,* 981 F.2d 1016 (9th Cir 1992).  However, the *Matney* court found an examining physician properly accorded little weight when he had examined the claimant one time, produced a brief report, the diagnosis was based primarily upon the medical history and subjective complaints of the claimant, and the physician "had agreed to become an advocate and assist in presenting a

15 - OPINION AND ORDER

meaningful petition for Social Security benefits." *Matney,* 981
F.2d at 1020.  In this case, Ingermanson was seen by staff
members of MCMH, supervised by Dr. Fredrickson, at least 25 times
between her initial assessment on June 19, 1997, and August 12,
1997, when Dr. Fredrickson opined that she was unable to engage
in substantial gainful activity.  Tr. 517-61.  On July 22, 1997,
MCMH staff noted that they had requested  a "6 yr psych history,"
apparently from a source other than Ingermanson.  Tr. 544.  Dr.
Fredrickson had a great deal of information other than
Ingermanson's subjective complaints upon which to form an
opinion. The ALJ has failed to articulate specific, legitimate
reasons to discredit Dr. Fredrickson's opinion.

As to Dr. Vandiver's opinion, the ALJ found he was not
entitled to treating psychiatrist status because the August 1998
chart note occurred during the doctor's first contact with
Ingermanson.  A psychiatrist can be considered a treating source
when he prescribes and monitors medication but leaves most of the
direct patient contact to others within a treatment team. *Benton
v. Barnhart,* 331 F.3d 1030, 1039 (9th Cir 2003).  Dr. Vandiver
continued to treat Ingermanson and had had substantial contact
with her when he wrote his September 2003 letter.  Tr. 1180-82;
1201;  1254-66; 1303-04; 570-72.  Dr. Vandiver continued to treat
Ingermanson from June 2002, when her GAF was assessed as 40,
through November 2004.  Tr. 1164-1306.  At her annual assessment

in March 2004 she was assigned a GAF of 39.  Tr. 1311-14.  Dr.
Vandiver recorded many instances of confusion and difficulty
thinking clearly.  Tr. 574, 1180, 1254, 1301, 1303, 1323.  His
September 2003 opinion was not based solely upon Ingermanson's
reports and Dr. Vandiver recognized that she was not a reliable
reporter.

The ALJ rejected Dr. Vandiver's opinion because he failed to
articulate any residual effects of drug use.  This argument is
not a legitimate reason to reject Dr. Vandiver's opinion, just as
it was not a legitimate reason to reject Dr. Fredrickson's
opinion.

The ALJ rejected Dr. Vandiver's September 2003 opinion as
advocacy.  The fact that he wrote a letter supporting a finding
of disability does not constitute evidence that the doctor had
abandoned his professional objectivity.  The ALJ failed to
articulate specific, legitimate reasons to reject Dr. Vandiver's
opinion.

III.  REMAND FOR PAYMENT OF BENEFITS IS APPROPRIATE

The decision whether to remand for further proceedings
or for immediate payment of benefits is within the discretion of
the court.  *Harman v. Apfel,* 211 F.3d 1172, 1178 (9th Cir.), *cert.
denied,* 531 U.S. 1038 (2000); *Benecke v. Barnhart,* No. 03-15155,
2004 WL 1770096 (9th Cir. Aug. 9, 2004).  The court's decision
turns on the utility of further proceedings.  A remand for an

award of benefits is appropriate when no useful purpose would be
served by further administrative proceedings or when the record
has been fully developed and the evidence is not
sufficient to support the Commissioner's decision. *Rodriguez v.
Bowen,* 876 F.2d 759, 763 (9th Cir. 1989).

        The Ninth Circuit has established a three-part test "for
determining when evidence should be credited and an immediate
award of benefits directed." *Harman v. Apfel,* 211 F.3d at 1178.
The court should grant an immediate award of benefits when:

        (1)  the ALJ has failed to provide legally sufficient
        reasons for rejecting such evidence, (2) there are no
        outstanding issue that must be resolved before a
determination of disability can be made, and (3) it is clear
        from the record that the ALJ would be required to find the
        claimant disabled were such evidence credited.  *Id*
        The second and third prongs of the test often merge into a
        single question:  Whether the ALJ would have to award
        benefits if the case were remanded for further proceedings.

*See id.* at 1178 n.2.

        The ALJ improperly rejected the evidence establishing the
severity of Ingermanson's  mental limitations.  If credited, the
doctors' testimony establish that Ingermanson could not work on a
regular and sustained full-time basis by the time of Dr.
Fredrickson's opinion on August 12, 1997, and therefore, she was
disabled.   The ALJ's determination that Ingermanson was capable
of performing work is not supported by substantial evidence.

         The court, therefore concludes this matter should not be
remanded for further proceedings.  *See Schneider v. Comm'r,* 223

18 - OPINION AND ORDER

F.3d 968 (9th Cir. 2000).  *See also Reddick v. Chater,* 157 F.3d

715, 729 (9th Cir. 1998) ("We do not remand this case for further

proceedings because it is clear from the administrative record

that Claimant is entitled to benefits.")

<u>**CONCLUSION**</u>

    For these reasons, the Commissioner's decision is reversed

and remanded pursuant to sentence four of 42 USC § 405(g) for the

calculation and award of  benefits.

IT IS SO ORDERED.

    Dated this  <u> 13 </u> day of September 2006.


          <u>    /s/ Ann Aiken        </u>
              Ann Aiken
        United States District Judge


19  - OPINION AND ORDER